# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ROBERT EARL HOWARD,
DAMON PETERSON, CARL
TRACY BROWN and WILLIE
WATTS,

        **Plaintiffs,**

v.                              **Case No: 6:21-cv-62-PGB-EJK**

MELINDA N. COONROD,
RICHARD D. DAVISON and
DAVID A. WYANT,

        **Defendants.**
_____/

## ORDER

    This cause comes before the Court on Defendants' Motion to Dismiss (Doc. 24 (the "**Motion**")), filed on March 9, 2021. On April 23, 2021, Plaintiffs responded in opposition. (Doc. 35). Upon consideration, the Motion is due to be granted in part and denied in part.

## I.    BACKGROUND[1]

    Plaintiffs—along with over 100 individuals—are incarcerated in the state of Florida, serving life *with* the possibility of parole sentences for crimes committed when they were under the age of 18 years old. (Doc. 1, ¶ 1). The Eighth Amendment

---

[1] This account of the facts comes from the Complaint. (Doc. 1). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

to the United States Constitution mandates that states affirmatively afford juveniles serving life sentences a "meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation." *Graham v. Florida*, 560 U.S. 48, 75 (2010); *see also Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016) (finding this new substantive constitutional rule is retroactive).

In response to the Supreme Court's line of cases, Florida adopted new sentencing procedures for juvenile offenders serving life in prison. *See* Chapter 2014-2020, Laws of Florida (the "**2014 Juvenile Sentencing Statute**"). The 2014 Juvenile Sentencing Statute requires an individualized sentencing hearing to consider the offense committed along with the defendant's youth before imposing a life sentence. FLA. STAT. § 921.1401; (Doc. 1, ¶ 6). The Statute also requires a review after 15 or 25 years, depending on the severity and circumstances of the offense, where a judge must consider the defendant's maturation and rehabilitation to determine whether the sentence should be modified. FLA. STAT. § 921.1402. Here, the juvenile defendant is entitled to counsel, to attend the sentencing and resentencing, to hire experts and present evidence, to cross-examine witnesses, and to appeal the court's decision. (Doc. 1, ¶ 6).

Plaintiffs allege that "Florida does not, however, treat all juvenile lifers the same." (*Id.* ¶ 7).[2] Plaintiffs maintain that while juveniles sentenced to life *without*

---

[2] Plaintiffs explain that juveniles convicted of a capital homicide before May 25, 1994—when parole was abolished in Florida for these offenses–are serving life *with* parole sentences "and may only be released by the 'grace' of the [Florida Commission on Offender Review]," while

parole receive the constitutionally required "meaningful opportunity for review," the Statute is silent on whether it applies to juveniles sentenced to life *with* parole, and the State "has refused to provide the substantive and procedural benefits of the 2014 law to the Named Plaintiffs and Class Members." (*Id.*). Instead, Plaintiffs allege that juveniles sentenced to life with parole may only be released "in accordance with the limited process set forth in Florida's parole statutes" that is administered by the Florida Commission on Offender Review ("**FCOR**") and is "virtually identical for adult and juvenile offenders." (*Id.* ¶ 8). In this regard, juveniles sentenced to life *with* parole are "prohibited from attending meetings where the [FCOR] determines if and when they may be released. The Parole Commissioners never speak to or even see them." (*Id.* ¶ 9). Additionally, juveniles with parole are denied an "opportunity to correct any factual inaccuracies presented to the [FCOR] . . . [and] are not entitled to counsel nor are they given the right to have experts make mental health and risk assessments and testify as to their rehabilitation." (*Id.*). Thus, Plaintiffs contend that "Florida's parole system therefore directly contradicts the mandates of the U.S. Supreme Court cases that establish that juvenile lifers have a constitutional right to be released from prison upon demonstration of maturity and rehabilitation." (*Id.* ¶ 8).

---

juveniles convicted of a capital homicide after that date are serving life *without* parole sentences and "are now entitled to extensive judicial review of their sentences and a panoply of due process rights." (*Id.* ¶ 11). Plaintiffs maintain that there is "no substantive reason to treat the two groups differently," but allege that the juveniles serving life *with* parole sentences "are not being afforded the right to meaningful opportunity for release now required by the Constitution." (*Id.*).

Consequently, Plaintiffs filed a five-Count Complaint alleging: a violation of the Eighth Amendment's prohibition on cruel and unusual punishment under 42 U.S.C. § 1983 (Count I); a violation of the Fourteenth Amendment's guarantee of Due Process under § 1983 (Count II); a violation of the Fourteenth Amendment's guarantee of Equal Protection under § 1983 (Count III); a violation of the Sixth Amendment under § 1983 (Count VI); and a declaratory claim seeking a declaration "that Florida Statute Ch. 947 and Florida Administrative Code §§ 23-21.006 to 23-21.0161 are unconstitutional on their face and as applied to Plaintiffs and all those similarly situated." (Doc. 1). Defendants now move to dismiss the Complaint, and the matter is ripe for review.

## II. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Challenges to subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks only require the court to determine if the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id.* at 1529. As such, the allegations within the complaint are assumed true for the purpose of the motion. *Id.* On the other hand, factual attacks challenge the existence of subject matter jurisdiction irrespective of what the complaint alleges. *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997). Accordingly, courts may consider information outside of the pleadings—including testimony, affidavits, and other evidence—and may make factual findings to resolve the motion.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Subject matter jurisdiction must exist at the time the action is commenced, and the party who invokes a federal court's subject matter jurisdiction bears the burden of establishing the propriety of exercising that jurisdiction. *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).[3]

### B. Failure to State a Claim

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a Rule 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Moreover, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although mere legal conclusions or a recitation of the claim's elements will not pass muster, a sufficient complaint does not require detailed factual allegations. *See Twombly*, 550 U.S. at 555. Indeed, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478

---

[3]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and resolve any doubts regarding the complaint's sufficiency in the plaintiff's favor. *See, e.g.*, *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 67.

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint because: (1) their claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) they lack standing; (3) they failed to exhaust administrative remedies prior to filing suit; (4) their claims are untimely under the statute of limitations; and (5) the state of Florida already satisfies the Constitutional requirements Plaintiffs complain about. (Doc. 24). With briefing complete, the matter is ripe for review.

### A. *Heck* Doctrine

Defendants first argue that Plaintiffs' Complaint does not "properly sound in § 1983 because, under *Heck* . . . [Plaintiffs' claims] can only be brought in a federal habeas petition." (*Id.* at pp. 2–5). Specifically, Defendants argue that "a prisoner cannot use § 1983 . . . where success would necessarily imply the

unlawfulness of a (not previously invalidated) conviction or sentence." (*Id.* at p. 3) (internal quotation and citation omitted). Plaintiffs respond that their claims are proper under § 1983 because success on their claims would not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." (Doc. 35, pp. 21–22) (internal quotation and citation omitted). Plaintiffs maintain that:

> [They] do not contend that their convictions or sentences are invalid or unconstitutional. They assert that Florida's parole system, process, and procedures deny them the meaningful opportunity for release upon demonstrated maturity and rehabilitation that the Constitution requires.
>
> . . .
>
> Plaintiffs seek the same judicial review process pursuant to the 2014 Juvenile Sentencing Statute afforded to juveniles sentenced to LWOP, which would require the trial court to hold a review hearing to consider the Plaintiffs' maturation and rehabilitation to determine whether early parole release is appropriate.
>
> . . .
>
> In the alternative, Plaintiffs seek this Court to require Defendants to revise Florida's current parole process to specifically account for their demonstrated maturity and rehabilitation, their youth at the time of the original offense, and to provide a variety of other procedural protections.
>
> . . .
>
> Early release would not be guaranteed. Therefore, the *Heck* doctrine is inapplicable.

(*Id.*).

The Court finds that Plaintiffs' claims are not barred by *Heck*. The doctrine specifically states that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or

speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 471; *see also Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973) (observing that the language of the habeas statute is more specific than § 1983, and the history of the writ makes clear that it "has been accepted as the specific instrument to obtain release from [unlawful] confinement"). Case law indicates that "[t]he word 'necessarily' must not be ignored—if invalidation of a conviction or speedier release would not automatically flow from success on the § 1983 claim, then the *Heck* doctrine is inapplicable." *Hill*, 878 F.3d at 207.

Such is the case here. Put simply, *Heck* does not bar Plaintiffs' claims that Florida's parole system denies them meaningful opportunity for release in violation of their Constitutional rights. As Plaintiffs correctly state, their § 1983 claims if successful, would obtain quicker or new parole hearings, and the parole board would have discretion whether or not to shorten the prisoners' terms but because their claims would not necessarily call for speedier release, relief pursuant to § 1983 is available. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005); *see also Hill*, 878 F.3d at 210 ("The reasoning [in *Wilkson*] applies with equal force here, where the Plaintiffs do not seek direct release from prison or shorter sentence, but instead seek an examination of the Defendants' policies and procedures governing access to prison programming and parole eligibility, consideration and release. [The Sixth Circuit] has already expressly found such challenges cognizable under § 1983." (internal citation and quotations omitted)).

## B.    Standing

Defendants next argue that Plaintiffs' Complaint must be dismissed because they lack standing to assert claims for sentence review or resentencing. (Doc. 24, pp. 5–6). Defendants maintain—in a conclusory fashion—that Plaintiffs' claims lack traceability and redressability. (*Id.*).

To establish standing, a plaintiff must allege: (1) injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely the injury will be redressed by a favorable ruling. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

The Court finds that Plaintiffs have a concrete injury that is traceable to the challenged actions of Defendants. Plaintiffs have alleged that the Defendants, through their "current policies, procedures, and customs with respect to the parole review process" violate their constitutional rights by, among other things, "fail[ing] to provide a realistic and meaningful opportunity for release upon demonstrated maturity and rehabilitation . . . ." (Doc. 1, ¶¶ 159, 165). Plaintiffs also allege that Defendants violate their constitutional rights by "depriving Plaintiffs and the other Class Members of their equal rights to judicial reconsideration as provided to those juvenile offenders serving *de jure* LWOP sentences." (*Id.* ¶ 170). Plaintiff has sufficiently alleged that the complained of actions by Defendants caused Plaintiffs' complained of injuries.

Plaintiffs have also established the redressability requirement of the standing doctrine. It is likely, not speculative, that a favorable decision will lead to relief sought by Plaintiffs. *See Lujan*, 504 U.S. at 561; *see also Franklin v. Mass.*, 505 U.S. 788, 803 (1992) (redressability satisfied where it is "likely as a practical matter" that a court finding would result in the relief the plaintiffs sought, regardless of whether other government officials not before the court could provide that relief). Plaintiffs seek a declaration that the parole process is unconstitutional and violate Plaintiffs' constitutional rights by turning life with parole sentences into *de facto* life without parole sentences. If Plaintiffs prevail, they will receive a favorable decision that leads to this declaratory relief. Thus, Plaintiffs have standing to bring their asserted claims.

### C.    Administrative Remedies

Defendants argue that Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies. (Doc. 24, pp. 6–10). Specifically, Defendants maintain that the Prison Litigation Reform Act ("**PLRA**") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

PLRA, 42 U.S.C. § 1997e(a). "Prison conditions," Defendants argue, is defined in 18 U.S.C. § 3626(g)(2) and *Johnson v. Breedon*, 280 F.3d 1308 (11th Cir. 2002), *abrogated on other grounds by Patel v. Lanier Cnty.*, 969 F.3d 1173 (11th Cir. 2020):

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

*Id.* at 1324. Additionally, Defendants simply state that the Eighth Circuit has held that challenges to parole procedures are governed by the PLRA.[4] (Doc. 24, p. 7). Plaintiffs respond that "Defendants' suggestion that PLRA exhaustion extends beyond complying with the state's prison grievance process to filing a comprehensive rulemaking petition finds no support in the plain language of the statute and is refuted by multiple Supreme Court and Eleventh Circuit cases." (Doc. 35, p. 27). The Court agrees.

Defendants cite *O'Conner v. Carnahan*, No. 3:09cv224, 2012 WL 2201522, at *14 (N.D. Fla. Mar. 27, 2012), for their argument that the PLRA exhaustion requirements apply to Plaintiffs' claims regarding Florida's parole procedures. This does not provide any persuasive argument for Defendants' position because the Magistrate Judge was determining whether the plaintiff's grievance that he was denied psychiatric medications was subject to the exhaustion requirements. This

---

[4] The Eighth Circuit's opinion Defendant relies on states that "[a] challenge to parole procedures is a civil action with respect to prison conditions under the PLRA." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). As a preliminary matter, out-of-circuit opinions are merely persuasive authority in this Court. Here, the persuasive effect is negligible—the Eighth Circuit reached this broad conclusion in a one-page opinion without any supporting analysis.

Defendants also rely on *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), to say that the PLRA's exhaustion requirement is mandatory. In that case, the Supreme Court was tasked with determining whether the "exhaustion requirement requires proper exhaustion," not whether parole procedures were considered "prison conditions." *Id.*

case is inapposite. "Prison conditions" encompasses physical conditions, or the conditions affecting the daily lives of prisoners—including the psychological and emotional wellbeing. *See Johnson*, 280 F.3d at 1324 ("[C]ivil action with respect to prison conditions means any civil proceeding arising under Federal law with respect to *the conditions of confinement* or the effects of actions by government officials *on the lives of persons confined* in prison." (emphasis added)). "Prison conditions" does not include the propriety of and the procedures by which the state determines prisoners' continued confinement. Similarly, the Court finds that "the effects of actions by government officials on the lives of persons confined in prison," would cover those actions by government officials that affect the daily lives and wellbeing of prisoners.

As such, the Court finds that the PLRA exhaustion requirement does not apply to the claims at issue challenging Florida's parole process.

### D.    Statute of Limitations

Next, Defendants argue that Plaintiffs' claims are untimely and due to be dismissed under the applicable statute of limitations. (Doc. 24, pp. 10–12).

There is no federal statute of limitations for § 1983 claims, so courts must borrow the most analogous statute of limitations in the forum state. *See* 42 U.S.C. § 1988(a). Pursuant to Florida law, § 1983 claims "are subject to [Florida's] statute of limitations for personal injury claims." *Hillcrest Prop., LLC v. Pasco Cnty.*, 754 F.3d 1279, 1281 (11th Cir. 2014). Florida's statute of limitations for personal injury claims is four years. *See* FLA. STAT. § 95.11(3)(p).

"A statute of limitations is ordinarily considered an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence." *Md. Restorative Just. Initiative v. Hogan*, No. CV-ELH-16-1021, 2017 WL 467731, at *16 (D. Md. Feb. 3, 2017) (internal quotation marks and citations omitted). It is axiomatic that a "motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) ordinarily cannot reach the merits of an affirmative defense." *Id.* (internal citations and quotations omitted). Instead, affirmative defenses can only be resolved in a 12(b)(6) motion to dismiss "in the relatively rare circumstance where . . . all facts necessary to the affirmative defense clearly appear[] *on the face of the complaint*." *Id.* (emphasis in original).

Plaintiffs maintain that their Complaint "alleges that Florida's parole system is fundamentally flawed and, as a result, Plaintiffs' constitutional rights are violated each time they come up for review before FCOR." (Doc. 35, p. 35). Plaintiffs state that "[a]t each step of the parole process, Plaintiffs have experienced a continuing injury by being deprived of their right to demonstrate rehabilitation and maturation." (*Id.*). Thus, it is not clear from the face of the complaint that Plaintiffs' claims are time-barred. Whether they have demonstrated a continuing violation is a fact-specific inquiry that is premature to address at this stage of the litigation. *See Hogan*, WL 467731, at *16 (holding that "whether plaintiffs have demonstrated a continuing violation is a fact-specific inquiry that, in my view, is premature to address at this stage of litigation").

### E. Constitutional Requirements

Last, Defendant maintain that Plaintiffs' claims must be dismissed as a matter of law because Florida already satisfies Constitutional requirements. (Doc. 24, pp. 12–22).[5]

#### 1. Count I: Eighth Amendment

Defendants merely state that *Graham*,[6] *Miller*,[7] *Michel*,[8] and *Franklin*[9] "forecloses any claim of cruel and unusual punishment on Plaintiffs' part." (Doc.

---

[5] In a footnote, Defendants attempt to argue away Plaintiffs' stated statistics regarding Florida's parole procedures in comparison to other states with the unsubstantiated claim that Florida is harsher than other states in granting parole because its "gatekeepers are simply more determined to protect the public from harm (recidivism rates being well-established) than are authorities in numerous other jurisdictions in these troubled times." (Doc. 24, p. 18 n. 5).

This argument is troubling and flawed for many reasons. First, the State cannot justify constitutional violations with the assertion that they are tough on crime. Similarly, the State cannot justify individualized constitutional violations through fearmongering in stating that recidivism rates are generally "well-established."

[6] *Graham v. Florida*, 560 U.S. 48 (2010) (holding that for non-homicide juvenile offenders, the State must provide a meaningful opportunity to obtain release).

[7] *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that life without parole sentences for juvenile homicide offenders is allowed so long as the sentencer is given "discretion to consider the mitigating qualities of youth" and impose a diminished sentence. Meaning, juvenile homicide offenders sentenced to mandatory minimum life without parole must be entitled to a "realistic opportunity for release based on demonstrated maturity and rehabilitation").

[8] *State v. Michel*, 257 So. 3d 3 (Fla. 2018) (holding that the inmate in question would receive "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" when his parole was up for review 25 years into his sentence). The Courts finds the Defendants' use of this case misplaced because the Florida Supreme Court was not tasked with determining whether Florida's parole system actually *does* provide inmates with the required meaningful opportunity for release.

[9] *Franklin v. State*, 258 So. 3d 1239 (Fla. 2018) (holding that the sentence at issue did comply with *Graham*'s requirement that any life sentence for a juvenile nonhomicide offender be accompanied by meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation). The Court similarly finds this case irrelevant because the Florida Supreme Court was discussing the propriety of the inmate's sentence, not whether the parole system is fundamentally flawed.

24, p. 18). Plaintiffs respond that the Supreme Court "has repeatedly held that juvenile offenders have a constitutionally protected right to a meaningful opportunity for release predicated on a demonstration of maturity and rehabilitation, and any violation of that right is cognizable under the Eighth Amendment's proscription against cruel and unusual punishment." (Doc. 35, p. 11).[10]

At the outset, the Court notes that it agrees with other courts that have found that "the constitutional protections recognized by *Graham*, *Miller*, *and Montgomery* apply to parole proceedings for juvenile offenders serving a maximum term of life imprisonment." *See Flores v. Stanford*, 18CV2468, 2019 WL 4572703, at *8 (S.D.N.Y. Sept. 20, 2019). The Court finds that Plaintiffs have sufficiently pleaded Eighth Amendment violations. Plaintiffs have detailed out the ways in which Florida's parole system denies a "realistic opportunity for release based on demonstrated maturity and rehabilitation," and how such denial allegedly constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 1, ¶¶ 156–61). As such an early stage in the litigation, it is improper for the Court to determine the ultimate merits of Plaintiffs' constitutional claims and Defendants' Motion is due to be denied as to Count I.

---

[10] Plaintiffs additionally cite *Montgomery v. Lousiana*, 577 U.S. 190 (2016) (holding that *Miller* was a substantive rule of law that applied retroactively to all juvenile homicide offenders serving mandatory life without parole sentences. Clarifies that *Miller* does not require a "formal factfinding requirement . . . a finding of fact regarding a child's incorrigibility . . . is not required.").

2. *Count II: Due Process*

Defendants argue that Plaintiffs' due process claims must be dismissed because "no fundamental right is at stake," and Plaintiffs "cannot show either a constitutionally-protected liberty interest or a constitutionally-protected inadequate process." (Doc. 24, pp. 18–20).

The Eleventh Circuit has stated that due process claims require three elements: (1) the deprivation of a constitutionally protected liberty interest; (2) state action; and (3) constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Additionally, "juvenile offenders serving a maximum term of life have a cognizable liberty interest in obtaining parole upon demonstrating maturity and rehabilitation." *Flores*, 2019 WL 4572703, at *10. *Graham*, *Miller*, and *Montgomery* stand for the proposition that "[i]f [a parole board] determines that a juvenile offender has demonstrated maturity and rehabilitation, parole [] is required as a matter of law." *Bonilla v. Iowa Bd. of Parole*, 930 N.W.2d 751, 777 (Iowa 2019) (citing *Montgomery*, 136 S. Ct. at 736; *Graham*, 560 U.S. at 75). Thus, "although *Graham* stops short of guaranteeing parole, it does provide the juvenile offender with substantially more than a *possibility* of parole or a mere hope of parole, it creates a categorical entitlement to demonstrate maturity and reform, to show that he is fit to rejoin society, and to have a meaningful opportunity for release." *Greiman v. Hodges*, 79 F. Supp. 3d 933, 945 (S.D. Iowa 2015) (emphasis in original). These cases "therefore, confer on juvenile offenders a constitutionally protected liberty interest in meaningful parole

review." *Flores*, 2019 WL 4572703, at *10 (internal quotation marks and citation omitted).

Having established that Plaintiffs have a cognizable liberty interest in meaningful parole review, the Court finds that Plaintiffs have sufficiently pleaded claims for due process violations. Plaintiffs plead that: (1) Defendants have deprived them of a meaningful opportunity for parole review, or release (Doc. 1, ¶¶ 9–10); (2) Defendants acted under color of state law in their capacities as members of FCOR (*Id.* ¶¶ 27–30, 71, 163); and (3) the current Florida parole process denies Plaintiffs the opportunity to demonstrate maturity and rehabilitation, fails to take their youth at the time of their offense into consideration, and bases parole decisions entirely on the original offense (*Id.* ¶¶ 106–07, 112, 119, 127, 136, 149). Additionally, Plaintiffs allege that the parole process fails to meet the basic requirements of procedural due process of notice and an opportunity to be heard. (*Id.* ¶¶ 165, 137, 144). Specifically, Plaintiffs allege that the parole process denies them the right to effective counsel at parole hearings and the right to retain experts/investigators and/or employ psychological testing to show maturity and rehabilitation. (*Id.*). Plaintiffs allege that they are not allowed to appear individually or through counsel at the parole hearings and consequently, that they are unable to challenge erroneous or detrimental evidence/information at the hearings. (*Id.*). Thus, the Court finds that Plaintiffs have sufficiently alleged claims for due process violations and Defendants' Motion is due to be denied as to Count II.

###### 3. *Count III: Equal Protection*

Penultimately, Plaintiffs' Complaint alleges that the 2014 Juvenile Sentencing Statute, Florida Statutes ch. 947, and Florida Administrative Code §§ 23-21.006 to 23-21.0161 "violate the Equal Protection Clause of the Fourteenth Amendment by depriving Plaintiffs . . . of their equal rights to judicial reconsideration as provided to those juvenile offenders serving *de jure* [life without parole] sentences." (Doc. 1, ¶ 170). Plaintiffs also allege that these Florida laws "depriv[e] Plaintiffs . . . of their equal rights to judicial reconsideration as provided to those juvenile offenders serving life with parole who received judicial resentencing hearings after *Atwell* but before *Franklin*, between 2016 and 2018." (*Id.* ¶ 171).

In their Motion, Defendants argue that Plaintiffs do not fall within any recognized suspect classification for equal protection purposes, do not make any claim of discrimination with respect to parole procedures, do not satisfy the required showing of invidious discrimination, and show no basis for any reasonable inference of "intentional or purposeful discrimination." (Doc. 24, pp. 20–21). Therefore, Defendants argue that Plaintiffs' equal protection claims should be dismissed. Plaintiffs respond that they have adequately pleaded all elements of an equal protection claim. (Doc. 35, pp. 16–18).

Specifically, Plaintiffs argue that they "do not contend that they fall within a suspect class but instead that Defendants have impinged upon their constitutionally-protected liberty interest as set forth in *Graham* and *Miller*." (*Id.*

at p. 17). Moreover, Plaintiffs maintain that they have demonstrated "discriminatory intent" and disparate impact by alleging that "juveniles sentenced to life *after* 1994 receive the constitutionally-required meaningful opportunity for review that the 2014 Juvenile Sentencing Statute provides, while juveniles sentenced *before* this date are deprived of this constitutional protection based solely on the dates of convictions." (*Id.* at p. 18).

To establish an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national original, or some other constitutionally protected basis." *Sweet v. Sec'y, Dept. of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) and *Damiano v. Fl Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)).

Plaintiffs' equal protection claims fail because they have not alleged that they were treated differently than similarly situated prisoners based on "some form of *invidious discrimination* tied to a constitutionally protected-interest." *Id.* (emphasis in original). Plaintiffs have not claimed that they were treated differently from others because of race, religion, or national origin.[11] *Id.* (citing *Snowden v. Hughes*, 321 U.S. 1, 8 (2944) ("The unlawful administration . . . of a

---

[11] Plaintiffs argue that even if the law does not create suspect classifications or impinge upon a constitutionally protected right, they can still establish an equal protection claim subject to rational basis review. (Doc. 35, p. 17 n. 6). Plaintiffs fail to recognize that they still must allege that they were treated differently on account of invidious discrimination. *Sweet*, 467 F.3d at 1319.

state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."). "[A] mere demonstration of inequality is not enough; the Constitution does not require *identical* treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991) (rejecting a state prisoner's equal protection claim when he received a longer sentence than other prisoners); *see also Village of Arlington Heights v. Metro. Housing Dev., Corp.*, 429 U.S. 252, 264-65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Simply put, although Plaintiffs allege that Defendants impinged upon their constitutionally-protected liberty interest in obtaining a meaningful opportunity for release, Plaintiffs have not alleged that they were treated differently on account of *invidious discrimination*. As such, Plaintiffs' equal protection claims fail, and Defendants' Motion is due to be granted as to Count III.

### 4. *Count IV: Sixth Amendment*

Finally, Defendants argue that because Plaintiffs' Sixth Amendment claims only address sentence reviews, they must be dismissed because the Sixth

Amendment only applies to "criminal prosecutions," and does not apply to parole revocation hearings. (Doc. 24, pp. 21–22). The Court agrees.

Plaintiffs argue that their Sixth Amendment claims arise from the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the line of cases that followed. Plaintiffs maintain that because they have been denied a meaningful opportunity to obtain release, their life with parole sentences amount to *de facto* life without parole sentences—a sentence that exceeds their statutory maxima. (Doc. 35, p. 19).

*Apprendi*, however, does not provide much insight here. In relevant part, *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Specifically, the Supreme Court held that a New Jersey hate-crime statute was unconstitutional because it commissioned judges to make factual findings that enhanced their power to punish defendants beyond the maximum penalties prescribed for any given offense. *Id.*

In 1994, Charles Apprendi, Jr., fired a spray of .22-caliber bullets into his neighbors' home. Apprendi was indicted with numerous criminal offenses, none of them alleging that his actions towards his neighbors were racially motivated. *Id.* at 469. Apprendi pleaded guilty to possession of a firearm for an unlawful purpose, an offense which held a 10-year maximum sentence. *Id.* at 469–70. However, a separate New Jersey hate-crime statute authorized the imposition of a greater

punishment for any crime motivated by racial hatred. The trial judge found that Apprendi's crime was racially motivated and sentenced him to a prison sentence greater than the 10-year maximum that otherwise could have been imposed. *Id.* at 470. Relying on due process concerns and the right to a trial by jury, the court struck down the New Jersey hate-crime statute. The Supreme Court stated that "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Id.* at 491 (internal quotation marks and citations omitted).

Although Plaintiffs here make a clever argument, their challenges to Florida's parole procedures to not fall within the ambit of *Apprendi* and the Sixth Amendment. *Apprendi* imagines situations in which the jury is deprived of their duty to determine the facts underlying the crimes defendants are charged with. Here, Plaintiffs challenge the administrative procedures on the backend of a defendant's sentence, not the factual basis upon which the sentence lies. Their argument that the administrative procedures that make up Florida's parole process somehow morph their sentences into *de facto* life *without* parole sentences— thereby increasing their maximum penalties—is misplaced. *See Flores*, 2019 WL 4572703, at *12 ("The Court also rejects plaintiffs' argument that defendants violate *Apprendi* by denying parole to juvenile offenders serving potential life terms 'based on new fact-finding' that plaintiffs say must be performed by a jury. . . . Parole Board commissioners therefore may evaluate whether a juvenile offender

meets the proper criteria for discretionary release, even if the fact finder did not address those criteria in the offender's underlying criminal proceedings."). The Plaintiffs' sentences have always been life *with the possibility* of parole; parole has never been guaranteed. Plaintiffs have not—and cannot—allege that the jury is deprived of any duty to make the factual findings that underpin their sentences. As such, the Court finds that *Apprendi* is not applicable to Plaintiffs' parole challenges.

To be sure, the Eleventh Circuit has held that "[t]he Sixth Amendment applies only to 'criminal prosecutions,' which does not include parole revocation hearings." *U.S. v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015). Plaintiffs have not provided the Court with any case law to the contrary. As such, the Court finds that the Sixth Amendment does not apply to Plaintiffs' challenges to Florida's parole procedures and Defendants' Motion is due to be granted as to Count IV.

## IV. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motions to Dismiss (Doc. 24) is **GRANTED** as to Counts III and IV;

2. Defendant Motion is otherwise **DENIED**; and

3. On or before July 16, 2021, Plaintiffs may file an Amended Complaint consistent with the directives of this Order, if they believe they can do

so in accordance with Rule 11. Failure to timely file will result in dismissal of **Counts III and IV with prejudice**.

**DONE AND ORDERED** in Orlando, Florida on June 25, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties