IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

ROBERT EARL HOWARD, et al.,

   *Plaintiffs,*

v.

MELINDA N. COONROD, et al.,   Case No. 6:21-cv-00062-PGB-EJK

   *Defendants.*

_____ /

### DEFENDANTS' MOTION IN LIMINE TO LIMIT QUESTIONING OF DEFENDANTS, LIMIT AGENCY WITNESS TESTIMONY, AND EXCLUDE TESTIMONY OF ECKERT, HARPER AND SOPP

Defendants, Melinda N. Coonrod, Richard D. Davison, and David A. Wyant, sued in their official capacities as Chair, Vice Chair, and Secretary, respectively, of the Florida Commission on Offender Review ("FCOR"), by and through undersigned counsel move to limit Plaintiffs' questioning of Defendants, employees of Defendants, and exclude testimony of three of Plaintiffs' witnesses.

<u>Preliminary Statement of the Case</u>

Plaintiffs allege that Class members (Florida inmates serving parole eligible life sentences, or sentences of 470 months or more, for crimes committed as juveniles), are being denied "some meaningful opportunity" to obtain early release by demonstrating their subsequent maturity and rehabilitation to the Commission.

Plaintiffs allege that Defendants, who are the current Commissioners of the Florida Commission on Offender Review (FCOR), do not comply with the requirements of the Eighth and Fourteenth Amendments to the United States Constitution in this regard.

Defendants are quasi-judicial officers. As such, they should not be compelled to testify regarding their decision-making processes in the matters that come before them. Requiring such testimony runs afoul of both the judicial immunity for such officials and judicial privilege.

Moreover, this case relates to whether Florida's parole system meets the requirements of the Constitution. From the Motion to Dismiss stage onward, Plaintiff have been clear that they are not disputing individual sentences of the Class members or any decisions by Defendants regarding individual Class members for the various parole issues that have come before Defendants for each Class member over the years.

Thus, this case is about the Florida parole system, not about specific decisions regarding specific Class members.  That leads to the conclusion that testimony from Defendants about their decision-making is not relevant to this case, and thus should not be subject to questioning at trial.  This would be true even if it were not for principles of judicial immunity and judicial privilege, but these principles override any other considerations.

Plaintiffs have blurred the line between Florida's parole system, and the many individual results for Class members over the years.  Plaintiffs assert that the results over time, when taken as a whole among all Class members, demonstrate a constitutional violation.  However, this compilation is a compilation of many individual results for each of many Class members, and thus Plaintiffs necessarily are arguing about the individual results in all of the Class members' files.  They are disputing the results of all Commission Meetings that set a Presumptive Parole Release Date ("PPRD"), for any Class member, and all other Commission Meetings at which a decision was made regarding any Class Member.  It is from the sum of all of these results that Plaintiffs attempt to argue that the total results must mean that Florida's system is unconstitutional.

This aggregation of results also ignores the fact that each inmate was different, each inmate's crimes were different, each inmate's demonstrated

maturity and rehabilitation was different. In short, every aspect of every Class member was different, and the Court cannot draw conclusions about the results without second-guessing the result for every Class member at every Commission Meeting that considered the inmate's situation for parole matters.

Any analysis is complicated by the fact that Florida's system is somewhat anomalous. That is because parole was abolished, and since that time the numbers of Class members will never increase, and has been continually shrinking. One obvious result is that over the years those inmates who would have been Class members, but who were released to parole, were released because Defendants and their predecessors believed that the inmates had demonstrated sufficient maturity and rehabilitation to warrant release. That has resulted in the fact that many of the best candidates for parole have already been paroled. Since they are not part of the Class, this has skewed the statistics for the inmates who are left.

## MEMORANDUM OF LAW

Defendants previously moved to quash the notices and for a protective order for the Commissioners of FCOR on the grounds, inter alia, that they enjoyed quasi-judicial immunity for their adjudicative acts. Doc. 63. [1]

---

[1] A similar case, where the trial court denied a defense motion relating to County Commissioners is on appeal at the 11th Cir. Court of Appeals.

Quasi-Judicial Immunity

Defendants previously moved for a protective order because Plaintiffs wanted to interrogate the individual Defendants regarding their decision-making. Such decision-making by parole board officials is definitionally an adjudicative function, which enjoys such broad recognition by the courts as enjoying quasi-judicial immunity.  Therefore, since there was no dispute that these Defendants were parole officials, and case law is undisputed that parole officials are entitled to quasi-judicial immunity, no further factual inquiry was needed.

Defendants still have a pending motion regarding that issue and incorporate that by reference herein.  Docs. 63, 69, 73, 83, 88.

While it is generally important to undergo a fact analysis to determine whether an individual is entitled to quasi-judicial immunity, no such analysis was necessary because there were no relevant facts in dispute and the Commissioners' entitlement to quasi-judicial immunity is established as a matter of law. The Supreme Court tacitly recognized this when it set out factors for consideration for a prison discipline committee.  Regarding the discipline committee, the Court stated

---

Kimberly Regenesis, LLC v. Lee Cnty., No. 2:19-CV-538-SPC-NPM, 2021 WL 5028204,  (M.D. Fla. Oct. 29, 2021).

> We conclude, nonetheless, that these concerns, to the extent they are well grounded, are overstated in the context of constitutional violations. We do not perceive the discipline committee's function as a "classic" adjudicatory one, as petitioners would describe it. Tr. of Oral Arg. 9–10. Surely, the members of the committee, unlike a federal or state judge, are not "independent"; to say that they are is to ignore reality. They are not professional hearing officers, as are administrative law judges. They are, instead, prison officials, albeit no longer of the rank and file, temporarily diverted from their usual duties. See Ward v. Johnson, 690 F.2d, at 1115 (dissenting opinion). They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision. They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The credibility determination they make often is one between a co-worker and an inmate. They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee. See Ponte v. Real, 471 U.S. 491, 513, 105 S.Ct. 2192, 2204–2205, 85 L.Ed.2d 553 (1985) (dissenting opinion). It is the old situational problem of the relationship between the keeper and the kept, a relationship that hardly is conducive to a truly adjudicatory performance.

Cleavinger v. Saxner, 474 U.S. 193, 203–04, 106 S. Ct. 496, 502, 88 L. Ed. 2d 507 (1985).

However, the Court then compared the discipline committee to a parole board, explaining the differences between them.

> Neither do we equate this discipline committee membership to service upon a traditional parole board. The board is a "neutral and detached" hearing body. Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). The parole board member has been described as an impartial professional serving essentially " 'as an arm of the sentencing judge.' " Sellars v. Procunier, 641 F.2d, at 1302, n. 15, quoting Bricker v. Michigan Parole Board, 405 F.Supp. 1340, 1345 (ED Mich.1975). And in

6

> the penalty context, the parole board is constitutionally required to provide greater due process protection than is the institution discipline committee. Wolff v. McDonnell, 418 U.S., at 561, 94 S.Ct., at 2977.

Id at 204.

Therefore, for the reasons above as well as cited in Defendants' prior motions, this Court should protect Defendants' immunity and not require them to testify regarding their quasi-judicial decision-making.

## Judicial Privilege

Concurrent with judicial immunity, Defendants should enjoy a judicial privilege to not have to answer questions regarding their judicial decisions. See Howard v. Lyons, 360 U.S. 564 (1959). The privilege is rarely invoked, but has been discussed in many different contexts. A judicial privilege has been recognized expressly in the Eleventh Circuit. Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit, 783 F.2d 1488, 1520 (11th Cir. 1986) ("We conclude, therefore, that there exists a privilege (albeit a qualified one, infra) protecting confidential communications among judges and their staffs in the performance of their judicial duties."). The privilege appears to apply to quasi-judicial officers as well. Butler v. Dunn, 2:19-CV-530-ALB, 2019 WL 7041866, at *5 (M.D. Ala. Dec. 20, 2019) ("Although Dunn argues that his written statements

7

are privileged because they were originally made to the Alabama Ethics Commissions, such quasi-judicial privileges are waived when privileged communications are published outside the circle of those who must have knowledge of them pursuant to the decision-making process."). It is sometimes known as "judicial deliberative process" or "mental process privilege." Cain v. City of New Orleans, CV 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016).

"[A] judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties," i.e., "matters within the scope of his adjudicative duties." Ciarlone v. City of Reading, 263 F.R.D. 198, 202 (E.D. Pa. 2009) (quotations omitted) (citing United States v. Morgan, 313 U.S. 409, 422 (1941); Cain v. City of New Orleans, CV 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016); Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904); Robinson v. Comm'r of Internal Revenue, 70 F.3d 34, 38 (5th Cir. 1995); Grant v. Shalala, 989 F.2d 1332, 1344-45 (3d Cir. 1993); United States v. Roebuck, 271 F. Supp. 2d 712, 718 (D.V.I. 2003); United States v. Edwards, 39 F. Supp. 2d 692 (M.D. La. 1999).

The Supreme Court of Massachusetts conducted a review of judicial privilege in federal and state courts and found multiple justifications for the

"universal recognition by courts," based on several principles. Decisions need to be final, with judges not impeaching their own verdicts, and that reviews taking place years later are unlikely to be accurate. In re Enf't of Subpoena, 463 Mass. 162, 167–72 (2012). There must be quality and integrity of decision-making. Avoiding post hoc probing of their mental processes also ensures the integrity and quality of judicial decision-making. This also supports the "free and honest development of a judge's own thinking and candid communications among judges and between judges and the courts' staff in resolving cases before them." Id. That court also referred to the need for independence and impartiality. "The judiciary's independence from the other branches of government and from outside influences and extraneous concerns has been one of the cornerstones of our constitutional democracy, intended to ensure that judges will be free to decide cases on the law and the facts as their best judgment dictates, without fear or favor." Id. These principles help to ensure judicial independence and the "free and impartial judging of disputes among parties regardless of how powerful or powerless they might be (or how popular or unpopular their causes) is the protection of a judge's deliberative process." Id.

The privilege operates separate from judicial immunity, still requiring an appearance and then the invocation of the privilege in response to specific

9

questions. <u>Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit</u>, 783 F.2d 1488, 1518 (11th Cir. 1986).

In the case at bar, determining the parameters of permissible questions in advance of trial will help ensure an orderly trial process.

<u>Testimony of Agency Witnesses Should Not Address The Substance Of The Applicable Laws And Rules</u>

Much of the deposition testimony of FCOR witnesses involved questions to witnesses regarding what the applicable laws stated, or what the applicable Florida Administrative Code Rules ("F.A.C.," or "Rule"), stated.  At trial, these matters should not be at issue.  Thus, asking witnesses to state the contents of laws or Rules would be cumulative and unnecessary.  Moreover, a witness' testimony about the contents of a law or Rule cannot change what the law or Rule actually contains, and any accidental misstatement the contents of a law or F.A.C. Rule would only serve to confuse the issues and perhaps unintentionally lead this Court to a mistaken conclusion.

<u>Witnesses Eckert, Harper, And Sopp Do Not Have Admissible Testimony, And Should Be Excluded</u>

These witnesses are the listed authors of the study attached to Plaintiffs' Complaint. None of these witnesses is identified as an expert, and thus are prohibited from providing their opinions.

Their other testimony lacks an evidentiary basis. Data gathered by them includes hearsay information regarding criminals who were resentenced following Florida's <u>Atwell</u> decision. The study is replete with errors in addition and the cases studied were drawn from an inappropriate pool. Regardless, none of these witnesses has first-hand knowledge of any of the facts to which they might testify. Moreover, Plaintiff's expert did not rely upon this study for her opinions.

WHEREFORE, this Court should protect the decision-making thought process of Defendants, limit FCOR witnesses regarding testimony of the contents of laws and Rules, and exclude witnesses Eckert, Harper, and Sopp.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL OF FLORIDA

*/s/ Glen A. Bassett*
Glen A. Bassett (FBN 615676)
Special Counsel
Complex Litigation Bureau
Office of the Attorney General of Florida

11

The Capitol, Suite PL-01  
Tallahassee, Florida 32399-1050  
Telephone: (850) 414-3300  
Facsimile: (850) 488-4872  
glen.bassett@myfloridalegal.com  
*Attorneys for Defendants Melina N. Coonrod, Richard D. Davison, and David A. Wyant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court's CM/ECF system, and thereby was served upon all parties through their counsel of record, on this 22nd day of December, 2022.